IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| SAIDRICK PEWITTE, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ANNETTE HAYCRAFT, ET AL. ) <br> ) <br> Defendants. ) | No. 3:13–cv–0484 <br> Judge Campbell/Bryant |

To: The Honorable Todd J. Campbell, District Judge

## REPORT AND RECOMMENDATION

### I. INTRODUCTION

By order entered May 24, 2013 (Docket Entry No. 3.), this matter was referred to the undersigned for case management and to recommend ruling on any dispositive motions.

Plaintiff Saidrick Pewitte ("Mr. Pewitte"), a prisoner proceeding *pro se* and *in forma pauperis* under 42 U.S.C. 1983, filed the instant complaint on May 20, 2013, alleging that defendant Annette Haycraft ("Haycraft" or "Officer Haycraft") violated his Eighth Amendment right to be free from cruel and unusual punishment. (DE 1) Plaintiff has alleged that his injuries are the result of Haycraft forcing Plaintiff to wear handcuffs that were too small for approximately 12 hours.[1] (DE 1) Plaintiff seeks damages under 42 U.S.C. § 1983 in an amount exceeding $50,000 as well as

---

[1] Ronnie J. McCoy, a prisoner from West Tennessee who accompanied Plaintiff to Bledsoe, claims that the handcuffs were fastened around Plaintiff's wrists at approximately 6:15 AM and that the prisoners arrived at Morgan County, which sits in the Eastern Time Zone, at 6 PM local time.

1

injunctive relief related to the treatment of prisoners during transport from facility to facility. (DE 1) Pursuant to Federal Rule of Civil Procedure 12(b)(6) and Federal Rule of Civil Procedure 56(a), Defendant Haycraft filed a motion for dismissal or, in the alternative, for summary judgment on February 9, 2015. (DE 68) While at first blush it appears that Plaintiff failed to respond to this motion, closer examination reveals that Defendant mailed a service copy of her motion papers to an old address at Plaintiff's former place of incarceration.[2] However, the motion may be resolved as a matter of law without the benefit of Plaintiff's response.

For the reasons stated below, the undersigned Magistrate Judge recommends that Defendant's motion to dismiss and for summary judgment be DENIED.

## II. BACKGROUND

On May 1, 2013, Plaintiff was transferred from the West Tennessee State Prison in Henning, Tennessee, to the Bledsoe County Correctional Complex in Pikeville, Tennessee ("Bledsoe"), with stops along the way in Nashville first, and then Morgan County. (DE 69-1, Deposition of Saidrick Pewitte, pp. 16-24) According to Plaintiff, prior to embarking at 7:00 AM, Haycraft placed handcuffs on Plaintiff, a morbidly obese individual suffering from diabetes, for transport. When Plaintiff complained that the handcuffs were too small and were hurting, and further informed Haycraft that he was a diabetic, Haycraft allegedly replied that the handcuffs did not look too small, and that Plaintiff would be okay. (DE 69-1, p. 19)

---

[2] Defendant attempted to serve its motion upon Plaintiff at Bledsoe County Correctional Complex in Pikeville, Tennessee. (DE 68, p. 4) However, in or around July 2013, Plaintiff was transferred from the Bledsoe County facility to his current place of confinement, the Northwest Correctional Complex in Tiptonville, Tennessee. (DE19)

2

Despite several such complaints during the course of the transport to Nashville (where Haycraft was replaced by an Officer Jones), Haycraft neither loosened the handcuffs nor investigated Plaintiff's complaints. (*Id.* at pp. 46-47)

After arriving at the Charles Bass Correctional Complex in Nashville, Tennessee, and waiting for Haycraft's replacement to board the transport, Plaintiff complained to that replacement, defendant Jones, who did not have a larger pair of handcuffs but was able to loosen Plaintiff's handcuffs by one "notch." (*Id.* at pp. 14-15) Plaintiff was forced to wear these handcuffs until he reached the Morgan County Correctional Complex ("Morgan County") at approximately 6:00 PM, and officials there replaced them with a pair of larger handcuffs. (*Id.* at pp. 25-26)

Plaintiff requested medical attention both at Morgan County and at Bledsoe upon arrival there. (*Id.* at pp. 30-33) Plaintiff's injuries identified by the medical staff included "1.5 cm ulcerations" on his wrists and "some purulent discharge" on May 9, 2013 (DE 69-2, Saidrick Pewitte Medical Records, p. 11). Plaintiff also reported "gaping holes" in his wrists that were "running pus," "pitiful scars," and a loss of strength in his right hand. (DE 69-1, Deposition of Saidrick Pewitte, pp. 33, 39).

For her part, Officer Haycraft has testified by affidavit that she has no recollection of Plaintiff or any interaction she may have had with him on the transport in question, nor does she recall witnessing or being told of any injury to or discomfort in his wrists caused by his restraints. (DE 70, Affidavit of Annette Haycraft) Haycraft moves this Court to enter judgment in her favor as a matter of

3

law, offering three points for consideration. First, Haycraft submits that Plaintiff only alleges *de minimis* injuries; thus, she is entitled to dismissal or, in the alternative, summary judgment on Plaintiff's deliberate indifference claim. (Defendant's Motion to Dismiss, DE 68, p.2). Second, Haycraft submits that Plaintiff alleges no evidence that Defendant acted maliciously or sadistically with the intent to cause harm to Mr. Pewitte, rather than to maintain the safety and security necessary to transport prisoners between institutions; thus, she is entitled to dismissal or, in the alternative, summary judgment on Plaintiff's excessive force claim. (Defendant's Motion to Dismiss, DE 68, p.1) Third, and finally, Haycraft submits that to the extent she is sued in her individual capacity, she is entitled to qualified immunity from money damages because her conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would have known. (Defendant's Motion to Dismiss, DE 68, p.2)

### III. CONCLUSIONS OF LAW

As an initial matter, the undersigned has considered Defendant's motion under the standards applicable to summary judgment pursuant to Fed. R. Civ. P. 56, in light of the affidavit, deposition, and documentary evidence it relies upon. Moreover, while Defendant primarily argues the deficiencies of Plaintiff's deliberate indifference claim and only addresses the excessive force theory "[o]ut of an abundance of caution" (DE 69, pp. 13-14), the undersigned has disregarded Defendant's argument related to any claim of deliberate indifference to a serious medical need, as from the outset of this litigation the Court construed Plaintiff's pro

4

se complaint as claiming an Eighth Amendment violation under an excessive force theory. (DE 3, pp. 3-4)

A. Standard of Review

To prevail on a motion for summary judgment, the movant must demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Miller v. Calhoun County,* 408 F.3d 803, 811–12 (6th Cir. 2005) . A "genuine issue of material fact" exists when the proof upon which that issue turns could induce a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248-49 (1986). The burden of establishing the absence of a factual dispute rests with the moving party. *Id.* at 250 n.4.

In deciding whether summary judgment is appropriate, the court "must look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial." *Sowards v. Loudon County,* 203 F.3d 426, 431 (6th Cir. 2000), *cert. denied,* 531 U.S. 875 (2000). In so doing, the district court must "draw all reasonable inferences in favor of the nonmoving party" in its analysis of the affidavits and other submissions. *Sadie v. City of Cleveland,* 718 F.3d 596, 599 (6th Cir. 2013) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)).

B. Analysis of the Motion

Defendant Haycraft seeks summary judgment against Plaintiff Pewitte, pursuant to Federal Rule of Civil Procedure 56(a). (DE 68) Specifically, Defendant

claims that (1) Mr. Pewitte sustained only *de minimis* injuries, if any, and consequently was not subjected to the use of excessive force, and (2) to the extent that Haycraft is sued in her individual capacity, she is entitled to qualified immunity from money damages. (DE 69). For the following reasons, the undersigned disagrees with Defendant with respect to Plaintiff's excessive force claim and Defendant's assertion of qualified immunity, and thus recommends that Defendant's motion for summary judgment be **DENIED.**

> ***1. Officer Haycraft is not entitled to judgment as a matter of law regarding the issue of the use of excessive force in violation of Eighth Amendment rights.***

The Eighth Amendment to the U.S. Constitution protects prison inmates from cruel and unusual punishment including any "unnecessary and wanton infliction of pain." *Barker v. Goodrich*, 649 F.3d 428, 434 (6th Cir. 2011) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). As with other Eighth Amendment claims, "excessive force" claims require a prisoner to prove subjective and objective components: (1) the defendant must act with a subjectively culpable state of mind when applying the force in question, and (2) the application of force must objectively rise to a level of constitutional magnitude. Here, genuine issues of material fact exist with respect to both components of the analysis.

> *a. A genuine issue of material fact exists regarding the subjective component of excessive force analysis.*

A genuine issue of material fact exists regarding whether Officer Haycraft acted with a subjectively culpable state of mind when fastening Mr. Pewitte's

handcuffs too tightly. To satisfy the subjective component of an Eighth Amendment claim alleging use of excessive force, we consider "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). Further, in determining whether force was applied in a malicious or sadistic manner, the Court should consider factors such as (1) the need for application of the force, (2) the amount of force used, (3) the extent of injury inflicted, (4) the threat to the safety of staff and inmates reasonably perceived by the prison official, and (5) any efforts made to temper the severity of the forceful response. *Whitley v. Albers*, 475 U.S. 312, 321 (1986).

Here, this five-factored analysis is best fit for a jury to apply. With regard to factor one, the inmate transport process may call for the need for application of force (handcuffing), but Plaintiff alleges that the handcuffs were applied too tightly in a manner beyond what was necessary to ensure security. With regard to factor two, notwithstanding Defendant's assertion that she would have ensured adequate wrist mobility by placing her fingers between Mr. Pewitte's wrists and the handcuffs (DE 70, ¶ 7), Mr. Pewitte contrarily asserts that the amount of force applied was excessive, because it caused pain, swelling, and blistering in his hands and wrists over the course of the lengthy transport. (DE 69-1, Deposition of Saidrick Pewitte, pp. 19-20). Regarding factor three, while Defendant asserts that Mr. Pewitte suffered only *de minimis* injuries, Mr. Pewitte asserts that the handcuffs left blisters that burst into open sores after the handcuffs were removed. (*Id.* at pp.

31-32) Additionally, the medical report shows Mr. Pewitte experienced "ulcerations" and "purulent discharge" on his wrists. (DE 69-2, Saidrick Pewitte Medical Records, pp. 10-12). As to the fourth and fifth factors, there is nothing to suggest that Mr. Pewitte posed a threat to inmate or officer safety by resisting his restraints or initiating unrest during the transport procedure, nor is there proof that Officer Haycraft made any effort to temper the severity of Plaintiff's restraint, as Mr. Pewitte asserts she persistently ignored his complaints for the duration of the transport. However, Officer Haycraft asserts the heightened need for secure restraints when taking inmates outside the prison walls, and Plaintiff's own testimony establishes the relatively few physical signs of any wrist injury or discomfort which were apparent when Officer Haycraft was there to see them. Regardless of whether a balancing of these factors is enough for Plaintiff to prevail at trial, the undersigned finds that these factors are fit for a jury's consideration. Thus, there remains a genuine dispute as to whether Defendant maliciously or sadistically refused to loosen Mr. Pewitte's tight handcuffs -- despite being advised that he was a diabetic and, repeatedly, that he was in pain -- indicating a subjectively culpable state of mind to support an excessive force claim.

Defendant draws the undersigned's attention to a case from the Northern District of Illinois that, according to Defendant, indicates that handcuffing too tightly is within a prison official's discretion and does not rise to the level of a constitutional violation. (DE 69, p. 17) (citing *Adams v. Battaglia*, 2011 WL 2038722 (N.D. Ill. May 24, 2011)). However, while similar, the factual background of

*Battaglia* does not match the facts at issue. In *Battaglia*, the overweight prisoner complained of tight handcuffs to twenty different officers during a prisonwide shakedown and suffered cuts, swelling, and numbness in his wrists. Here, the overweight prisoner complained of tight handcuffs to the same officer repeatedly and suffered blistering and swelling in his wrists during inmate transport. The court in *Battaglia* determined that there was no evidence to support a finding that any particular defendant was malicious or sadistic; however, here, a genuine issue of material fact exists regarding this determination, because there is proof that a specific official ignored Mr. Pewitte's repeated complaints over the course of a three- to five-hour period. While it is true that prison officials are given wide-ranging discretion to utilize judgment in application of force to maintain institutional security, s*ee Bell v. Wolfish*, 441 U.S. 520, 547 (1979), the proof that Haycraft persistently ignored Mr. Pewitte's complaints for the entire transport raises an issue of material fact regarding whether Haycraft left the handcuffs tight in a good faith effort to maintain discipline within her range of discretion or with malicious or sadistic intent. *Cf., e.g., Ray v. Hogg*, 2007 WL 2713902 (E.D. Mich. Sept. 18, 2007) (determining that an excessive force claim survived summary judgment when the inmate testified that the guards fastened handcuffs too tightly during transport then laughed at inmate and tightened the cuffs further, even though there was scant evidence of injury in the medical records and the guards testified they had no recollection of the incident).

*b. A genuine issue of material fact exists regarding the objective component of excessive force analysis.*

In addition to the question of material fact regarding the subjective prong of "excessive force" analysis, there also remains a question of material fact regarding the objective prong of "excessive force" analysis. "The objective component of an Eighth Amendment claim is…contextual and responsive to contemporary standards of decency," but "[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated." *Hudson v. McMillian,* 503 U.S. 1, 8-9 (1992). Thus, in the excessive force context, if prison officials maliciously and sadistically use force to cause harm, fulfilling the subjective component of the analysis, the objective component is accordingly met, as well. This standard holds true whether or not significant injury is evident. *Id.* at 9. On the other hand, "not … every malevolent touch by a prison guard gives rise to a federal cause of action." *Id*. Accordingly, though a plaintiff need not show a significant or serious injury, the mere *de minimis* use of force does not ordinarily implicate constitutional protection. *Id*. at 9-10.

Additionally, a prisoner's testimony to his injuries may be sufficient to meet the objective component and survive summary judgment in an excessive force case, even if there are no medical records to substantiate the claim. In *Myers v. Transcor America, LLC*, a prisoner attested that his handcuffs and leg restraints were too tight during transport trips that caused him to suffer swelling and discoloration in his hands and feet, chafing and bleeding in his wrists, and bruising, scarring, and

cuts from his tight restraints. 2010 WL 2038722, *10 (M.D. Tenn. Sept. 9, 2010). The prisoner attested that the transport officers did not take action despite his repeated complaints and signs of developing injury. *Id*. This court found that even though the prisoner produced no medical records of his injuries and the medical staff who examined him upon arrival after transport noted no injuries in their report, there was still sufficient evidence to raise a genuine issue of material fact regarding the objective component of the claim. *Id*. This court noted that the prisoner's "affidavit provides an evidentiary basis sufficient to substantiate his injuries irrespective of the lack of any medical documentation of the presence of injuries." *Id*. Likewise, here, Mr. Pewitte attests that his handcuffs were too tight during a transport trip, causing him to suffer swelling, blistering, scarring, and discomfort, and Haycraft, the transport officer, did not take action despite his repeated complaints. (DE 69-1, Deposition of Saidrick Pewitte, pp. 19-20). Hence, Mr. Pewitte's testimony provides an evidentiary basis sufficient to substantiate the non- de minimis nature of his injuries, especially when combined with the medical documentation of the presence (if not the severity) of such injuries.

Defendant draws the undersigned's attention to a Sixth Circuit case that affirms that *de minimis* injuries are not enough to sustain a viable excessive force claim. (DE 69, p. 18) (citing *Richmond v. Settles*, 450 Fed.Appx. 448, 454, 2011 WL 6005197 at *5, (6th Cir. Dec. 2, 2011)). Nevertheless, the facts in *Richmond* are distinguishable. While the plaintiff in *Richmond* only vaguely alleged "pain and injuries," Mr. Pewitte specifically testified to blistering, bleeding, and "gaping holes"

11

in his wrists with "running pus." (DE 69-1, Deposition of Saidrick Pewitte, p. 33). Moreover, the medical records in *Richmond* indicated that the plaintiff was "ok, just a little scratch here and there," whereas the medical records in this case indicate small "ulcerations" and "purulent discharge." *Richmond* at *4; DE 69-1, Saidrick Pewitte medical records, pp. 10-11. Accordingly, a jury could determine that Mr. Pewitte suffered more than *de minimis* injuries, notwithstanding a contrasting outcome in *Richmond*.

Consequently, a question of fact remains regarding both the objective and subjective components of the "excessive force" analysis. Drawing all reasonable inferences in favor of Mr. Pewitte, there remains a genuine dispute of material fact as to the use of excessive force under the Eighth Amendment. Mr. Pewitte adequately alleges that Officer Haycraft's refusal to loosen the handcuffs despite Mr. Pewitte's persistent complaining for a period of hours was malicious or sadistic, causing him to suffer a constitutionally sufficient injury. While Plaintiff's evidence may or may not be enough to prevail at trial, the undersigned finds that the moving party has not carried its burden of proving the absence of any genuine issues of material fact regarding the excessive force claim. Accordingly, the undersigned recommends that Defendant's motion for summary judgment be DENIED with respect to that claim.

### *b. Officer Haycraft is not entitled to qualified immunity.*

Officer Haycraft is not entitled to judgment as a matter of law with respect to the issue of qualified immunity, because her alleged conduct violates clearly established rights of which a reasonable person would have known.

Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Hence, qualified immunity applies unless (1) the allegations give rise to a violation of a constitutional right, and (2) the right was clearly established at the time of the incident. *Burgess v. Fischer*, 735 F.3d 462,472 (6th Cir. 2013). As the Sixth Circuit has illuminated, "[f]or a right to be clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Binay v. Bettendorf*, 601 F.3d 640, 646-47 (6th Cir. 2010) (quoting *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003)). The qualified immunity question is a purely legal question to be determined by the trial judge prior to trial. *Donta v. Hooper*, 774 F.2d 716,719 (6th Cir. 1985).

With respect to the first prong of qualified immunity analysis, as aforementioned, the proof of record establishes a genuine question of material fact regarding Officer Haycraft's placement of handcuffs on Plaintiff in a manner which was excessively tight given the size of his wrists and his diabetic condition, and

which resulted in some extent of injury; such proof has been found to support a constitutional claim of excessive force. *See Morrison v. Bd. Of Trustees of Green Twp.*, 583 F.3d 394, 402-03 (6th Cir. 2009). Thus, the first prong of the analysis is fulfilled, and application of the qualified immunity defense turns on the second prong – whether Mr. Pewitte's rights were "clearly established."

With regard to the second prong of qualified immunity analysis, the Sixth Circuit has held that "the right to be free from excessive force, including 'excessively forceful handcuffing,' is a clearly established right for purposes of the qualified immunity analysis." *Kostrzewa v. City of Troy*, 247 F.3d 633, 641 (6th Cir. 2001) (citing *Martin v. Heideman*, 106 F.3d 1308, 1313 (6th Cir. 1997)); *see also Lyons v. City of Xenia*, 417 F.3d 565 (6th Cir. 2005). Thus, qualified immunity is improper where, as here, a genuine issue of material fact exists regarding this issue. Indeed, the Sixth Circuit articulated, "if there is a genuine issue of fact as to whether an officer's use of force was objectively reasonable, then there naturally is a genuine issue of fact with respect to whether a reasonable officer would have known such conduct was wrongful." *Id.* at 642. Therefore, even though prison officers are otherwise granted wide-ranging discretion to apply varying degrees of force to maintain order among inmates, *see Hudson v. McMillian*, 503 U.S. 1, 6 (1992), this discretion does not grant them authority to use force maliciously or sadistically, thereby violating clearly established constitutional rights.

Because a genuine issue of material fact exists regarding whether Officer Haycraft acted with malicious or sadistic intent, granting qualified immunity is

improper. Accordingly, the undersigned recommends that Defendant's motion for summary judgment be DENIED with respect to the assertion of qualified immunity from money damages.

## IV. RECOMMENDATION

In light of the foregoing, the Magistrate Judge recommends that defendant Haycraft's motion for summary judgment be **DENIED**.

Any party has fourteen (14) days from receipt of this Report and Recommendation in which to file any written objections to it with the District Court. Any party opposing said objections shall have fourteen (14) days from receipt of any objections filed in which to file any responses to said objections. Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *Thomas v. Arn*, 474 U.S. 140 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004) (en banc).

ENTERED this 20th day of July, 2015.

      s/John S. Bryant

_____
JOHN S. BRYANT
UNITED STATES MAGISTRATE JUDGE